**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARY E. FERGUSON,

Plaintiff-Appellant,

v.

ERIC K. SHINSEKI, in his official
capacity as Secretary of Veteran Affairs,
United States Department of Veteran
Affairs,

Defendant-Appellee.

No. 13-3009
(D.C. No. 2:11-CV-02563-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

Mary Ferguson worked in food service and later drove tractors for the

Department of Veterans' Affairs in Leavenworth, Kansas. When she applied for but

didn't win a different job — as a "maintenance mechanic leader" responsible for

various plumbing, electrical, and mechanical building systems — she sued, alleging

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

that the VA had discriminated against her on the basis of sex. When the undisputed record presented at summary judgment revealed that Ms. Ferguson just wasn't qualified for the job, the district court entered judgment for the VA. Ms. Ferguson asks us to undo this result, but we cannot.

Following its usual practice, the VA's Human Resources department sought to "sanitize" all applications for the mechanic leader job so each might be evaluated anonymously. The department then chose two subject matter experts, John Metz and Shawn Scanlon, to review and rate the applications, along with a representative from Human Resources. Though the applications didn't have names on them, Scanlon and Metz apparently could identify many of the applicants (including Ms. Ferguson and several of her coworkers) because of the information the applications contained. Even so, Scanlon and Metz told Human Resources that they believed they could evaluate all the applicants fairly and they proceeded on their way.

The job announcement listed six "job elements" against which the applications were to be judged. The first was a "screen-out element" — an "element" an applicant had to satisfy to qualify for any further consideration. This element stated that the applicant had to have "the ability to lead general maintenance mechanics and the other trades as required." After reviewing Ms. Ferguson's application — an application that gave little indication of her qualifications for overseeing the maintenance of building systems — Scanlon and Metz gave her a "screen-out score"

of 1 out of 5. Because of this, she was deemed unqualified for the position and disqualified. The same thing happened to three male applicants.

At some point, though, one of these male applicants complained about his "not qualified" rating. In response, Metz and Scanlon took a fresh look at each disqualified application. This time they decided Ms. Ferguson's work in food service required a degree of leadership skills, even if the job wasn't strictly related to building systems, and on this basis increased her initial "screen-out" score to 2. Under Human Resources procedures, that score, in turn, meant her application now had to be evaluated against the remaining five elements. Metz and Scanlon proceeded to do just that, examining Ms. Ferguson's application for evidence suggesting she possessed knowledge of tools used in building maintenance; the ability to interpret blueprints and shop drawings; knowledge of technical and construction practices; and knowledge about the assembly and repair of the relevant equipment systems. In the end, they found that Ms. Ferguson's application evinced almost no evidence of any of this and gave her a total score of only 10 (again using the 1-5 scale for each question). For a candidate to proceed for further evaluation after scoring against all elements, a minimum total score of 12 was required. So Ms. Ferguson's application again failed.

To establish a triable claim of sex discrimination under Title VII by means of circumstantial evidence (the road Ms. Ferguson seeks to travel on the evidence before us) a plaintiff must begin by showing a "prima facie case" of discrimination. A

prima facie case of discrimination requires proof of three things: (1) the plaintiff belongs to a protected class; (2) she applied to a position for which she was qualified; and (3) she was rejected under circumstances giving rise to an inference of discrimination. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013).

The difficulties in this case begin with the second element, just as the district court found. The most important qualification for this job was the ability to lead building maintenance mechanics and Ms. Ferguson's application listed next to no relevant experience. Neither did she fare any better with the other five listed job elements. As the subject matter experts noted, Ms. Ferguson never worked in building maintenance and was unfamiliar with many of the tools and skills regularly used or required in that field.

To this Ms. Ferguson replies by pointing to a former maintenance mechanic leader, Matt Smith, who later opined that she had the ability to do the job. But Mr. Smith never evaluated Ms. Ferguson against the job elements set forth by the VA, and neither did he provide any reason to believe the subject matter experts' evaluation of her experience under those criteria was inaccurate in any way. Ms. Ferguson notes that she later applied for a similar job with the VA in Topeka and that the subject matter experts there scored her more highly than Metz and Scanlon had. But the Topeka experts eventually picked someone else for their job, too. Neither, for that matter, has Ms. Ferguson identified anything in the record suggesting that the Topeka VA used the same hiring criteria for its job, that the criteria used for the

Leavenworth job were somehow improper, or (again) that the subject matter experts in Leavenworth were incorrect in any way in their evaluation of her experience against the criteria they employed.

Even if Ms. Ferguson could satisfy the second element necessary to establish a prima facie case, the district court found that she would still face trouble with the third, and again we have to agree. Ms. Ferguson argues that a jury could infer discrimination from the bare fact that her application wasn't treated anonymously. Because Scanlon and Metz knew which application was hers, she argues, a jury could rationally conclude she was discriminated against on the basis of sex. But nothing in Title VII or our precedents suggests that an employer who knows an applicant's identity must recuse herself from the hiring process or face an inference of unlawful discrimination in violation of federal law. Equally important, Ms. Ferguson has not presented any (other) evidence suggesting that the hiring process was unfair, or suggesting that there was any link between Scanlon and Metz's recognition of her application and the score she received. Neither does the record indicate similarly situated male applicants were treated differently than Ms. Ferguson.

Trying now a different tack, Ms. Ferguson points to an alleged conversation in which Mr. Metz told her that he thought his daughter-in-law should stay home and care for the children rather than go out at night. But one statement about Mr. Metz's daughter-in-law without any supporting context does not qualify as meaningful evidence of a bias against women as Ms. Ferguson asserts, much less establish a

nexus between this bias and the qualification rating she received. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1117-18 (10th Cir. 2007). Ms. Ferguson also identifies sexually crude comments that, she alleges, other co-workers made. But she fails to establish any connection between these statements — some allegedly occurring nearly a decade ago — and the employment decision or the decision-makers in this case.

Because the district court was correct in holding that Ms. Ferguson failed to present a prima facie case of discrimination, we have no need to reach its alternative holding that her sex discrimination claim independently fails for lack of evidence of pretext. Neither do we address Ms. Ferguson's claim for retaliation. Though she pursued a Title VII retaliation claim in district court, all her arguments in this appeal concern only her Title VII sex discrimination claim. *See* Fed. R. App. P. 28(a)(9)(A). Finally, we see no reversible error in the district court's denial of Ms. Ferguson's request for additional discovery under Fed. R. Civ. P. 56(d), given that she had six months to conduct discovery and sought additional time without specifying what further discovery she required or why the time she had already received was insufficient.

Affirmed.

Entered for the Court

Neil M. Gorsuch
Circuit Judge